IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SENNEX, INC., <br>     Plaintiff, <br>   vs. <br> JOHN PRATHER, GUMBY'S, LLC, <br> KENO GENO'S, GENO'S AND FIRST <br> CLASS REALTY, LLC, <br>     Defendants. | Civil Action No. 08-219 |

## MEMORANDUM OPINION

Plaintiff, Sennex, Inc. ("Sennex"), filed this action against Defendants, John Prather, Gumby's, LLC ("Gumby's"), Keno Geno's, Geno's and First Class Realty, LLC ("First Class Realty"), in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that Defendants tortiously interfered with a contract between Sennex and Liquid Grounds, LLC ("Liquid Grounds") and engaged in a civil conspiracy. Defendants removed the action to this Court on the basis of diversity of citizenship.

Presently before this Court for disposition is a motion to dismiss or transfer for improper venue and lack of personal jurisdiction, brought by the Defendants. For the reasons that follow, the Court concludes that Plaintiff has failed to establish that personal jurisdiction may be asserted over Defendants, and Defendants have demonstrated that venue in this district is improper. Therefore, Defendants' motion will be granted and this action will be transferred to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1406(a).

Facts

From May 2002 through December 2004, Sennex loaned over $264,000 to a company called Liquid Grounds to open and operate coffee shops. Sennex also entered into a written and

exclusive agreement with Liquid Grounds to provide business advice, assist in the expansion of business and assist Liquid Grounds with opening other shops in other states. As consideration for Sennex's business services, Liquid Grounds was to account to Sennex its gross sales every month and pay to Sennex a percent of those gross sales every month. Sennex also had a legally valid secured interest in Liquid Grounds's assets pursuant to promissory notes on the loans. (Compl. ¶ 10.)

In January and June 2004, Liquid Grounds opened two stores in Wheeling, West Virginia. The premises were owned by First Class Realty and/or leased by Gumby's, who leased and/or subleased the premises at both locations to Liquid Grounds. (Compl. ¶ 13.) As a direct result of Sennex's services, Liquid Grounds grossed over $433,000 in sales during its last year of business, January-December 2004, and experienced consistently increasing sales each month without one month lower than the previous month from April 2004 through December 2004. (Compl. ¶ 14.)

Defendants owned video gaming machines that generated hundreds of thousands of dollars worth of profits each year. In late 2003, John Prather approached the owners of Liquid Grounds and solicited them about placing video gaming machines in their coffee shops. (Compl. ¶¶ 15-16.) Plaintiff alleges that Prather knew of Liquid Grounds' exclusive business consulting and management agreement with Sennex in Pennsylvania and he knew that the contract gave Sennex the right to a percentage of Liquid Grounds's coffee beverage sales. (Compl. ¶¶ 17-18.)

Plaintiff alleges that Prather developed a scheme to install his video gaming machines at the two coffee shops in Wheeling: he waived Liquid Grounds' rent obligation to induce Liquid Grounds to install and oversee operation of his video gaming machines, and he required its

2

employees to work extended hours servicing the video gaming machines, serving coffee and selling alcoholic beverages to gaming patrons so that Defendants could profit from the machines without incurring any of the normal expense or overhead that a legal and valid video gaming operation would incur. He also induced Liquid Grounds to provide free coffee beverages to gaming customers by promising to reimburse Liquid Grounds 35% of the normal cost of each beverage given to a gaming patron and he instructed Liquid Grounds to maintain a handwritten log, rather than a register record, so that it could claim periodic reimbursement directly from him. This scheme deprived Sennex of revenue to which it had a right under its contract with Liquid Grounds. (Compl. ¶¶ 19-21.)

In October 2004, the stores were inspected by West Virginia lottery authorities and the West Virginia Alcohol Beverage Control Administration, who concluded that Liquid Grounds and Gumby's were in violation of liquor and gaming laws, respectively. Plaintiff alleges that Prather developed a scheme whereby he could assume control of the premises, assets and employees of Liquid Grounds so that he could ensure the continued service of alcohol to gaming patrons under Gumby's liquor license and the continued operation of video gaming machines under his own gaming license. He induced Liquid Grounds to file for bankruptcy protection, which, in turn, would help Liquid Grounds avoid its contractual obligations to Sennex. (Compl. ¶¶ 22-23.)

Plaintiff also alleges that Prather told Liquid Grounds that it was receiving bad business advice from Sennex and that he persuaded Liquid Grounds to discontinue its obligation to Sennex to "ring up" coffee sales to non-gaming patrons on the cash registers. Liquid Grounds rang up tens of thousands of dollars worth of "No Sale" receipts in order to give change for

3

coffee beverages: in December 2004 in one store alone, of 3,480 register transactions, 1,049 "No Sales" were rung up. Plaintiff also alleges that, on February 4, 2005, Prather caused to be filed a legally insufficient UCC-1 listing assets of which only the principles of Liquid Grounds were aware. Thus, he was attempting to secure rights to the assets of the debtor, Liquid Grounds, without Sennex's knowledge. (Compl. ¶¶ 24-25.)

On February 8, 2005, Liquid Grounds filed a bankruptcy petition. As a direct result, the Liquid Grounds business, employees and customers became Defendants' business employees, and customers of Liquid Grounds stores were taken over by Defendants permitting Prather's video gaming business to continue uninterrupted. Plaintiff alleges that it was deprived of the benefits of its bargain with Liquid Grounds and that it has also continued to pay the debt service on the money borrowed to fund Liquid Grounds. (Compl. ¶¶ 26-27.) Finally, Plaintiff alleges that inventory that was held at the two stores was sold by the debtors to Defendants the week of the filing of the bankruptcy petition and without Sennex's consent or the payment of any proceeds of the sale to Sennex, who had a right to this inventory and payment therefrom. (Compl. ¶ 29.)

Procedural History

Plaintiff initiated this action by filing a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania on or around January 25, 2008. Count I alleges that Defendants tortiously interfered with Sennex's contract with Liquid Grounds. Count II alleges that this conduct constituted a civil conspiracy.

Defendants removed the action to this Court on February 15, 2008, and on February 21, 2008, they filed an Amended Notice of Removal. The Amended Notice of Removal states that:

Sennex is a Pennsylvania corporation with its principal place of business in Bethel Park, Pennsylvania; John Prather is a resident of West Virginia; Gumby's and First Class Realty are both limited liability companies (LLCs) whose sole member is West Virginia resident John Prather; Keno Geno's and Geno's are merely registered West Virginia trade names of Gumby's; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Docket No. 5 at 1-2.) In summary, Plaintiff is a Pennsylvania citizen, Defendants are citizens of West Virginia[1] and the jurisdictional amount in controversy is met. Thus, Defendants assert and have demonstrated the existence of subject matter jurisdiction based on diversity of citizenship.

On February 21, 2008, Defendants filed a motion to dismiss or, in the alternative, to transfer for lack of personal jurisdiction and improper venue. They contend that the Court lacks personal jurisdiction over them for claims arising out of conduct that allegedly occurred in West Virginia, that venue in this district is improper and that this action should be dismissed or transferred to the United States District Court for the Northern District of West Virginia.

<u>Personal Jurisdiction</u>

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of *in personam* jurisdiction." <u>General Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d

---

[1] Every federal court to have addressed the question has concluded that LLCs do not enjoy corporate citizenship. Rather, they are citizens of all the states of which their members are citizens. <u>See</u> <u>Pramco, LLC v. San Juan Bay Marina, Inc.</u>, 435 F.3d 51, 54-55 (1st Cir. 2006); <u>General Technology Applications, Inc. v. Exro Ltda</u>, 388 F.2d 114, 120 (4th Cir. 2004); <u>Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.</u>, 374 F.3d 1020, 1022 (11th Cir. 2004) <u>GMAC Commercial Credit LLC v. Dillard Dep't Stores</u>, 357 F.3d 827, 829 (8th Cir. 2004); <u>Handelsman v. Bedford Village Assocs. Ltd. P'ship</u>, 213 F.3d 48, 51-52 (2d Cir. 2000); <u>Cosgrove v. Bartolatta</u>, 150 F.3d 729, 731 (7th Cir. 1998).

Cir. 2001) (citation omitted). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)). The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," although it can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992).

There are two alternative ways to establish personal jurisdiction. In this case, Plaintiff asserts only specific personal jurisdiction, which arises from a defendant's forum-related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted). After it has been determined that a defendant purposefully established minimum contacts, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 477 (citing International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). Specific personal jurisdiction is both claim-specific and defendant-specific. See Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001) (analyzing specific jurisdiction over tort and contract claims separately); Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe ... must be met as to each defendant.")

The Federal Rules of Civil Procedure authorize a district court to assert personal

jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). North Penn Gas, 897 F.2d at 689. Pennsylvania authorizes its courts to exercise maximum general and specific jurisdiction over individuals, corporations and other business entities. The plaintiff may show specific jurisdiction pursuant to Pennsylvania's long arm statute by showing that the defendant has engaged in forum-related activities, including "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. C.S. § 5322(a)(4).

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

John Prather, the sole member and manager of Gumby's and First Class Realty (Prather Aff. ¶ 1),[2] states that:

> None of the defendants are incorporated in Pennsylvania.
>
> None of the defendants have an agent for service of process in Pennsylvania.
>
> None of the defendants have officers based in Pennsylvania.
>
> None of the defendants are licensed to do business in Pennsylvania.
>
> None of the defendants regularly conduct business in Pennsylvania.
>
> None of the defendants own real property in Pennsylvania.

---

[2]    Defs.' Mot. (Docket No. 7) Ex. A.

> None of the defendants set foot in Pennsylvania or contacted Pennsylvania in connection with any dealings with Liquid Grounds, L.L.C. or its principals or any other matter that is the subject of the complaint.
>
> None of the defendants had any contact with Plaintiffs or its principals, until after the filing of the Liquid Grounds bankruptcy on or about February 8, 2005.

(Prather Aff. ¶¶ 9-16.)

Plaintiff does not dispute these assertions. In fact, it has not submitted any affidavits, but instead relies on the allegations of the complaint and arguments made by counsel in a brief. Based on this fact alone, Plaintiff has failed to support its assertion of personal jurisdiction through the submission of sworn affidavits or other competent evidence. Moreover, an examination of Plaintiff's arguments indicates that they are unavailing.

Plaintiff contends that: 1) Defendants have consented to this Court's exercise of jurisdiction over them and therefore the issue is moot; and 2) Defendants caused harm or tortious injury in Pennsylvania by acts and omissions outside of the state, thereby subjecting themselves to personal jurisdiction in a court in Pennsylvania.

Plaintiff's first argument is not on point. By statute, Pennsylvania allows for parties to consent to personal jurisdiction. 42 Pa. C.S. §§ 5301(a)(1)(iii) (individuals), 5301(a)(3)(ii) (LLCs). However, Defendants have not submitted such a consent in this case. See Prather Aff. ¶ 8 ("None of the defendants consent to the exercise of personal jurisdiction over them in Pennsylvania.") Rather, in response to an order of Court, they merely returned an election form indicating that, pursuant to 28 U.S.C. § 636(c)(1), they consent to the undersigned handling all

aspects of this case, rather than having it reassigned to a District Judge (Docket No. 6).[3] This filing in no way demonstrates that personal jurisdiction can be exercised over them in a court in Pennsylvania. Nor has Plaintiff pointed to any contacts Defendants had with Pennsylvania that would support the exercise of personal jurisdiction.

When a plaintiff alleges specific personal jurisdiction based on actions constituting an intentional tort and personal jurisdiction may not be asserted based on the defendant's contacts with the forum alone, the court must determine whether the "effects test" as articulated by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), can change the outcome. In Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir.1998), the Court of Appeals held that a plaintiff asserting personal jurisdiction arising out of intentional torts can satisfy the "effects test" if the plaintiff shows that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum so that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum so that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66 (footnote omitted). "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient to meet [the third] requirement. The defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied." Id. at 265 (footnote and citations omitted). In Imo Industries, the court held that New Jersey did not have personal jurisdiction over a German corporation for

---

[3] Thus, the instant Memorandum Opinion is being filed rather than a Report and Recommendation.

tortiously interfering with the plaintiff's attempt to sell its Italian subsidiary to a French corporation because plaintiff's headquarters in New Jersey was not the focus of the dispute.

In this case, Plaintiff has not submitted any evidence to support the allegations that: 1) Defendants knew that Liquid Grounds had a contract with Sennex (as opposed to some other party); or 2) Defendants knew that Sennex was a Pennsylvania corporation (as opposed to a corporation based in some other state). Moreover, even if these allegations were supported, they are insufficient to demonstrate that Defendants targeted at and focused their behavior on Pennsylvania. Thus, Plaintiff has not met the elements of the effects test and cannot demonstrate that personal jurisdiction may be asserted over Defendants within Pennsylvania.[4]

Venue

The Court of Appeals for the Third Circuit has held that the defendant challenging venue bears the burden of demonstrating that it is improper. Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). In a case based on diversity of citizenship, venue is proper: 1) where defendants "reside"; 2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or 3) where "any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

None of the Defendants reside in Pennsylvania, nor do the facts of this case suggest that a substantial part of the events or omissions giving rise to the claim occurred in Pennsylvania.

---

[4] Because Plaintiff has failed to make out a prima facie case of personal jurisdiction, the Court need not address whether fair play and substantial justice would render jurisdiction unreasonable. Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 153 n.9 (3d Cir. 1996).

Rather, as explained above, a substantial part of the events occurred in Wheeling, West Virginia where Defendants allegedly tortiously interfered with Sennex's contract with Liquid Grounds by inducing it to not ring up coffee sales, sell Sennex's inventory to them, file for bankruptcy, and so on. As the Court of Appeals has observed, "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim....'" Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). Finally, as explained below, the Northern District of West Virginia is a district in which this action could have been brought and therefore § 1391(a)(3) does not apply. Thus, Defendants have demonstrated that venue in this district is improper.

Transfer under § 1406(a)

Section 1406 provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Transfer under this statute is proper even though the court in which the action was filed lacks personal jurisdiction over the defendant. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).[5]

The Northern District of West Virginia would have personal jurisdiction over all of the Defendants, both because they are West Virginia residents and because of actions they engaged

---

[5] Plaintiff cites 28 U.S.C. § 1404(a) and argues that its choice of forum is entitled to great weight and that transfer would not serve the interests of convenience or fairness. However, the Court of Appeals has held that § 1404(a) provides for transfer only if venue is proper in the original forum. As venue is improper in this district, Plaintiff's choice of venue is not entitled to any weight and the only issue is whether the case should be dismissed or transferred pursuant to § 1406(a). See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

in within that state that are related to this case. It would also be an appropriate venue because a substantial part of the events giving rise to the claims occurred there.

Wheeling, West Virginia is located in Ohio County and federal court is held in Wheeling for the Northern District of West Virginia. 28 U.S.C. § 129(a). Therefore, the Northern District of West Virginia is a federal court where this action could have been brought.

Rather than suffer dismissal, this action will be transferred to the United States District Court for the Northern District of West Virginia pursuant to § 1406(a).

                                                    s/Robert C. Mitchell
                                                   ROBERT C. MITCHELL
                                                   United States Magistrate Judge

Date: March 17, 2008